IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDOLPH S. KOCH,                          )
                                           )
        Plaintiff                          )
                                           )
                                           )     Civil Action No. 08-1521 (PLF)
        v.                                 )     Civil Action No. 09-2111 (PLF)
                                           )     Civil Action No. 10-0150 (PLF)
MARY L. SCHAPIRO, et al.                   )     Civil Action No. 11-1645 (PLF)
                                           )     Civil Action No. 12-0301 (PLF)
        Defendants.                        )
                                           )
                                           )

**RECEIVED**

**MAY 2 6 2012**

Clerk, U.S. District and
Bankruptcy Courts

## RESPONSE TO COURT'S MAY 4, 2012 ORDER TO SHOW CAUSE

Plaintiff Randolph S. Koch hereby files this response to the Court's May 4, 2012 Order to

Show Cause Why His Cases Should Not Be Dismissed.

As a preliminary matter, Plaintiff Koch expresses his apology to the Court for not

appearing at the status conference scheduled for May 4, 2012.  Koch would never knowingly or

willingly disobey a court order.  In this case, Koch had been ill the week of the status

conference, and he only checked his mail infrequently because he spent most of his time

sleeping or otherwise resting in bed.   This has happened to Mr. Koch on several occasions over

the past three months, where he had spent most or all of his time in bed.  During that week,

Koch did go to two medical appointments, as he recalls, but came right home and entered

through the rear entrance to the apartment building and went straight upstairs and collapsed

into bed.  While he intended to do several other tasks, including going to the laundry room

(which would have enabled him to go to the mailboxes), he did not. He often puts off such tasks

for days on end.

While it might seem inconceivable to others that Koch does not find time or energy to retrieve his mail, unless that person is in Koch's situation, he or she should not draw such a conclusion.  Nobody can know what another person might be going through and what that person is or is not capable of doing.

As Koch recalls, he checked his mail early in the week of April 29th, and did not see the order.  He did not retrieve his mail every day that week, and recalls first seeing the order setting the status conference later the day of the conference, on May 4th.  It was too late to attend or otherwise participate in the conference, and it was too late to call the Court.  It is possible that the order might have been put in a different, adjacent box, as that happens every so often.  It seems that at least once a month Koch receives a piece of mail intended for another tenant in his building.

During the next several days, Koch tried to figure out what to do.  Despite very limited pro se litigation experience, he had no idea what was appropriate.  He thought of writing a letter to the Court, or filing a motion to request rescheduling.

As expressed earlier in the motion filed on April 16th in connection with one of the above-captioned cases, Koch intends to prosecute his cases and has no intention of abandoning them.

Koch, however, disputes very strongly the assertion stated in Defendants' motion dated April 24, 2012.

The fact that Koch has been able to file two complaints in the last year in no way justifies the conclusion that Koch is able to prepare and file an opposition to dispositive motions.  The tasks differ substantially, and one, a complaint, does not involve extensive travel

2

to and from, plus many hours researching in, a law library; the other--a memorandum of points and authorities and assembly of exhibits--does.

Koch can much more easily file a complaint, spending a limited number of hours on his home computer.  The two complaints he filed did not involved any travel to a law library and virtually no legal research other than minimal case authority he had already saved from prior research over the years.  Preparation of a memorandum of points and authorities has typically involved extensive and protracted research for hours and hours, over multiple visits, in a law library.

Koch has met with limited difficulty in completing a complaint and the associated paperwork at home.  He can sit at his home computer for a while drafting the complaint; he can take frequent breaks when fatigued and rest in bed.

Koch cannot do meaningful legal research at home.  He does not have access to Westlaw or Lexis, and cannot afford such research, even using a credit card.  It is far too expensive for even very brief research tasks.  The subscription plan for Westlaw costs over $330 per month, which Koch cannot afford.

Koch is on a very strict budget, with very limited resources.  Last year, Koch moved into a HUD-subsidized building.  His rent is subsidized under what is known as "Section 8."  He qualified for the lowest rent on the scale due to his very high, unreimbursed medical expenses. In fact, when he submitted his income information and medical expenses to the building management last year, his medical expenses totaled approximately 37-1/2 percent of his *gross* income.  At that point, he submitted no further medical expenses since he qualified for the lowest rent on the scale.  Had he kept on submitting medical receipts it is likely that his medical

expenses might have been almost as much as 45 percent (or more) of his gross income. Obviously, Koch is not a person who can pay for electronic legal research which he can do at home. Given Koch's medical problems and travel limitations, this would be the only feasible option for Koch to do legal research.

Last year, Koch had an office visit with his cardiologist, Edward Bodurian, M.D. Koch went to see him to talk about the recent diagnosis of possible heart failure detected on a chest x-ray performed by Koch's internist, Andrew Umhau, M.D. During the visit, Dr. Bodurian advised Koch that he should only be working at home, where he could work on his computer. He stated that Koch should not be commuting to work since he needed to be close to an emergency room. Koch had discussed with Dr. Bodurian his most recent hospital stay from Coumadin-related hemorrhaging and a hematoma, and Koch believes that the frequency of falls related to Koch's balance and mobility problems, led to Dr. Bodurian's advice against travel throughout the community.

Although not mentioned by Dr. Bodurian, because it did not come up, it appears reasonable to conclude that Koch should not be doing traveling throughout the community to visit law libraries. Any travel increases the risk of more accidents, and the more Koch travels, the higher the probability that another accident will occur.

That is why Koch has severely limited his use of public transportation, such as use of the Metro, and especially buses. Taxis are prohibitively expensive, and even MetroAccess presents problems because of the poor suspension and bouncing on MetroAccess vans, which have recently aggravated Koch's lower back problems and sciatica (radicular pain).

Nevertheless, Koch has been investigating the access to and resources available at local area law libraries. Although this would be inadvisable since more travel increases the risk of walking and balance-related accidents, he has decided that he has no choice since he does not wish to abandon his cases.

Obviously, given Koch's financial limitations, he cannot hire a lawyer to handle the cases. He has, in the past, spoken to several lawyers about handling his cases, but it has simply been not feasible to hire someone.

Several years ago, he contacted one firm to handle his MSPB appeal; the firm turned Koch down simply because it has a policy of not taking on a client in a dispute when there is another law firm involved. He knows that he cannot retain Swick and Shapiro for these cases, since he cannot afford their very substantial retainer, which would be a whole year's income.

A firm, Gary Gilbert & Associates, which handled Koch's MSPB appeal informed him that it could not continue to represent Koch even in subsequent proceedings in that case. The lawyer responsible for Koch's representation, Kevin Owen, had too many district court cases already. That only referred to Koch's matter which has not reached district court yet; it says nothing about the current cases in court. Obviously, if that firm could not take the case it was handling further, it could not take on the cases now in the Court.

Clearly, if Koch cannot afford the monthly fee for minimal Westlaw of approximately $330, he cannot afford the services of a lawyer who charges $250 to $350 *per hour*. Most employment lawyers, with whom Koch is familiar, charge huge retainers and/or hourly rates in that range. Koch cannot afford either.

A lawyer representing Koch in yet another case, Kelly McClanahan, does not have expertise in employment and civil rights cases; his specialty is FOIA and Privacy Act matters and security clearances.  He has already informed Koch that he does not have an interest in doing pure employment cases.  He is only handling the case he is because of FOIA issues.

Consequently, Koch is relegated to handling his cases himself, despite the fact he would much prefer to turn over the cases to a lawyer.  If he could do so, the cases would obviously move along much more expeditiously and Koch could limit the risk attendant to pressure-cooker deadlines, and frequent, tiring travel.   He would have more time to concentrate on medical treatments and the kind of physical rehabilitation which would increase Koch's mobility and stamina, and reduce pain and risk of falls.[1]

Koch believes that access to a law library is essential to his ability to adequately present his case.  In the criminal context, the Supreme Court has recognized that access to law libraries is essential to a prisoner's constitutional right of access to the legal system. *Bounds v. Smith*, 430 U.S. 817 (1977).  Although that right has apparently been severely restricted by subsequent Supreme Court cases, it does suggest that the availability of legal research materials is an essential component of the right of access to the Courts.  Further, the Supreme Court has recognized the right to civil litigants in state courts to a "meaningful opportunity to be heard by removing barriers to full participation in judicial proceedings." *Tennessee v. Lane*, 541 U.S. 509,

---

[1] Koch's pain specialist, Erik Dahl, M.D., has provided Koch with a prescription for physical therapy at Getwell-Rehab, a facility specializing in aquatic physical therapy.  The website states that aquatic therapy combines "the therapeutic effects of water with physical therapy for optimum results in post-surgical cases, weakness and pain syndromes." *See* http://www.getwell-rehab.com/cms/services.html.

523 (2004), *citing Boddie v. Connecticut*, 401 U.S. 371, 379 (1971*); M.L.B. v. S.L.J., 519* U.S. 102 (1996).[2]

While *Bounds* refers only to prisoners who need access to law libraries to attack sentences or matters directly related to their conditions of confinement, and Lane refers only to state court access, it seems that access to federal courts implicates a similar right of due process, although not under the 14th Amendment. The *Bounds* case and its progeny apparently recognize that some access to legal research materials is also part of the overall process of access to the Court.

It is impossible for Koch to minimally respond to the Defendants' numerous, and in some cases, premature dispositive motions without the wherewithal to do substantial legal research.

Koch has experienced some improvement in his pain since his epidural steroid injection last week. He will be attempting to visit a law library within the next week in an attempt to start the research that will be necessary to respond to the various motions. He will be doing so, however, against the strong advice last year from his cardiologist.

Koch wishes to note, moreover, that he believes several of the dispositive motions are premature. For example, C.A. No. 08-1521, involves a summary judgment motion where there are significant factual issues in dispute yet there has been absolutely no merits discovery, only minimal jurisdictional discovery. Koch was impaired with serious vertigo throughout the entire two month period allotted by the Court, and was even hospitalized for about 25 percent of that

---

[2] While Koch is able to reference these particular cases, it should not give the incorrect impression that he is able to do sufficient legal research at home now. He found the *Bounds* case through use of Google. Similarly, he knew of the due process issue from his longtime familiarity with *Tennessee v. Lane*. He cannot rely on Google for proper and exhaustive legal research and, particularly cite checking.

period.  He was never able to complete procedural discovery, and when Koch discussed the

issue of merits discovery with opposing counsel Fred Haynes, he only got an argument.  There

should not be a decision on a fact-intensive summary judgment motion without reasonable

merits discovery.  This Court itself called such actions disfavored in this Circuit.

In another case, involving lack of exhaustion where Koch could not take a grievance

alleging discrimination and retaliation to arbitration without the union's invocation, the

Defendant has argued for dismissal.  This is notwithstanding that Koch did all he could do to

take the case through the grievance process.  On almost identical facts, involving the very same

union and very same union attorney, another Circuit issued an opinion remanding that case for

consideration of equities.  This was despite the fact that complainant, like Koch, could not

invoke arbitration himself, and was therefore foreclosed from EEOC appeals before filing in

court.  In that case, once remanded, the Justice Department withdrew its exhaustion challenge,

acceding to the Circuit's decision, and essentially conceded on the equities that the

complainant's lawsuit could go forward.  The decision of the Justice Department to press the

issue against Koch in one of the instant cases appears to be in violation of established Justice

Department policy that it must present a united voice on the law.  The Civil Division website

states that

> [t]he Civil Division represents the United States in any civil or criminal matter
> within its scope of responsibility – protecting the United States Treasury, ensuring that
> the federal government speaks with one voice in its view of the law, preserving the
> intent of Congress, and advancing the credibility of the government before the courts.

*See* http://www.justice.gov/agencies/index-list.html#CivilDiv.

No doubt, opposing counsel will try to explain away the apparent breach of this policy in

this instant case by saying Koch is misinterpreting it, it doesn't apply, etc.  That would be

unavailing, since the Justice Department obviously chose to accede to the other Circuit by withdrawing their client's challenge on lack of exhaustion.

Even if the SEC and the Justice Department have a good argument that this policy of unified legal position doesn't apply, there is good reason to suggest that this Circuit might want to adopt a similar approach on almost identical facts out of fairness and consistency of law.

Koch has been aware of his reasonable defenses to the various dispositive motions for some time.  He just hasn't been able to complete his work in filing his oppositions because of his protracted exhaustion, need for bed rest, pain, mobility limitations and other episodic illnesses like ongoing upper respiratory infections, including pneumonia. Koch believes that he must still do substantial research to cite-check the authorities he found, to do further research on the issues of jurisdictional and merits discovery, including Rule 56(d), and to thoroughly cite-check authority.  He can do none of this at home without either Westlaw or Lexis.

Koch's April 15th motion was clearly overly-optimistic regarding his physical ability in the month that followed.  Due to his recurring exhaustion and pain he stayed in bed essentially for three days on at least two occasions.  He is somewhat optimistic again that he might begin to do the traveling to law libraries to move forward with his tasks. His pain, mobility and stamina have improved over the past week as a result of his May 17th pain injection.  He met with his pain specialist's physician assistant yesterday, and the treatment plan likely includes pulsed ablation of the lumbar nerve roots which could bring much longer relief.  This is likely to be done within the next month or so, depending on how long the pain injection from last week brings relief.

Koch wishes to reiterate that his failure to attend the important status conference was the result of his illness and incapacity, his confinement to bed for much of the period between the receipt of the Court's April 25, 2012 order and the May 4, 2012 conference. Koch often just checks his mail several times a week, since his only correspondence is bills, solicitations and so forth. He was very surprised to receive such an order, since he believed he would be given the opportunity to express his disagreement with Defendants' motion for a status conference by filing an opposition within fourteen days. He did not suspect the motion would be granted before he had a chance to respond.[3]

Accordingly, Koch hopes that the Court recognizes that he has done everything possible to move his cases along given his limitations, and hopes to do more to finalize the cases.

There has been no history of egregious misconduct by Koch, such that the grave sanction of dismissal is warranted. He has not tactically delayed, shown bad faith, or engaged in deliberate misconduct. Koch has not filed multiple baseless motions, or engaged in any of the other conduct justifying dismissal. *See Peterson v. Archstone Communities* LLC, 637 F.3d 416 (D.C.Cir. 2011). The Courts favor resolution of these disputes on the merits. *Id.*[4]

---

[3] Koch finds it very puzzling and disturbing that opposing counsel would now raise the issue of prejudice due to delay, particularly the unavailability of witnesses. Opposing Counsel Fred Haynes has filed dispositive motions in every case which would obviate the possibility of any merits discovery at all. This raises the question of whether the Defendants have a valid concern over the possibility of unavailability of witnesses, when Mr. Haynes has so confidently implied to Koch that these cases must be "brought to a conclusion," and that Mr. Haynes apparently believes it will be done without any discovery. This does not seem like an attorney who has a meaningful concern over unavailable witnesses, or else, he has doubts about the merits of his own dispositive motions. In fact, the person who is most likely to become unavailable due to death is Koch, given his affliction with multiple serious illnesses, including cardiac disease, diabetes, and thrombophilia, among others. Koch believes the Court should insist on more detailed and specific explanation of exactly what prejudice will affect the Defendants, and identify the likely witnesses who are at risk from becoming unavailable.

[4] Also very puzzling is Mr. Haynes assertions of prejudice due to a stay of slightly over one year. In a related case, C.A. 02-1492, neither his client nor its DOJ counsel expressed any concern over the very lengthy time it has taken to litigate that case. Although Koch does not know all of the details regarding the extensive and repeated extensions in that case, he knows that for over a year, there were numerous extensions of the discovery period

Accordingly, Koch respectfully requests that the Court not dismiss the Koch's cases.  To

do so, would be a serious blow to Koch's constitutional right to be heard on his claims.  Further,

Koch requests that the Court only consider the type of scheduling that would minimize the risk

for exacerbation of Koch's medical condition by providing the kind of flexibility and leeway so

that Koch can proceed without undue danger to his well-being.

Respectfully submitted,

May 25, 2012
Date

RANDOLPH S. KOCH
Plaintiff
6111 Montrose Road, Apt. 815
Rockville, MD 20852
Phone:  (301) 881-3163

---

which were either filed by the Defendant or were jointly filed by the Defendant and Plaintiff. It seems rather
disingenuous to assert that now the Defendant is on the verge of significant prejudice when it never did so in that
very protracted case, especially during the period in 2004 and 2005 when it requested so many extensions.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this May 25, 2012, a copy of the foregoing was served on counsel for Defendants by deposit in first-class mail, postage prepaid to:

Fred Haynes, Esq.
Office of the United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, DC  20530

RANDOLPH S. KOCH